UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN COON,

        Plaintiff,

v.

EDWARD WOOD, *et al.*,

        Defendants.

Civil Action No. 13-1400 (BAH)

Judge Beryl A. Howell

**MEMORANDUM OPINION**

The plaintiff, John Coon, proceeding *pro se*, brings numerous state law claims arising out of allegedly incorrect advice provided to him by his real estate agent regarding a sale of property in 2010. Pending before this Court is the defendants' Motion to Dismiss the Complaint, ECF No. 5. For the reasons stated below, the defendants' motion is granted in part and denied in part.

**I.    BACKGROUND**

In 2000, the plaintiff purchased a property "for investment purposes" in Washington D.C. ("the D.C. Property"). *See* Compl., ECF No. 1, ¶ 9. The plaintiff was represented in this transaction by the defendant Edward Wood, who is an "associate broker" at defendant City Houses D.C., which is a licensed and registered real estate agency, with its principal place of business in the District of Columbia. *Id.* ¶¶ 3, 5, 9. Brooke Meyer, the third and final defendant, owns City Houses D.C. and is its "principal broker." *Id.* ¶¶ 1, 4.

In 2010, the plaintiff decided to sell the D.C. Property and use the proceeds to finance a new investment property consisting of farm land near Charles Town, West Virginia ("the Farm"). *Id.* ¶ 10. To do so, the plaintiff once again retained Wood and City Houses, to assist him. *Id.* On June 17, 2010, the plaintiff and City Houses executed a Listing Agreement for

1

Improved Real Property (the "Brokerage Agreement").[1] *See* Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem."), Ex. A, ECF No. 5-2. The seven-page Brokerage Agreement provides, in part, that the "purpose" of the agreement is to "grant[] to [the defendants] the exclusive right to sell, exchange or convey the [D.C. Property.]" *Id.* ¶ 3. Additionally, under the Brokerage Agreement, the defendants earn their fee when the plaintiff "enters into a sales contract . . . with any buyer procured by seller . . . provided the buyer performs and settles on said contract." *Id.* ¶ 6(a).

Shortly after entering the Brokerage Agreement, the plaintiff executed a Regional Sales Contract (the "Sales Agreement"), on June 30, 2010, with another person for the sale of the D.C. Property. *See* Defs' Mem., Ex. B, ECF No. 5-3. The Sales Agreement provides that City Houses was "retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector or other professional service provider." *Id.* ¶ 27(d). The Sales Agreement also advises that: "The Broker can counsel on real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Purchaser and Seller are further advised to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters." *Id.* ¶ 27.

---

[1] Although the plaintiff did not attach, or quote, either the Brokerage Agreement or the Sales Agreement in either his Complaint or briefing during the Motion to Dismiss, *see generally* Compl., the Court may nonetheless consider the agreements, which were attached to the defendants' Motion to Dismiss and whose authenticity was not challenged by the plaintiff. A document outside the complaint may be considered on a motion to dismiss under Rule 12(b)(6), without converting the motion to one for summary judgment, if it is "referred to in the complaint" and is "integral to" the plaintiff's claim. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see also Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006); *Saunders v. Mills*, 842 F. Supp. 2d 284, 293 n.2 (D.D.C. 2012); *Pearson v. Dist. of Columbia*, 644 F. Supp. 2d 23, 29 n.1 (D.D.C. 2009). The Court may properly consider the documents at issue on this motion to dismiss because the plaintiff's Complaint plainly references the agreements, *see* Compl. ¶¶ 16–20, and alleges that the defendants breached their obligations under the agreements.

During the course of Wood and City House's representation, the plaintiff asked Wood whether "the sale of the [D.C.] Property could be accomplished in a way to avoid any capital gains on the [D.C.] Property." Compl. ¶ 11. Under 26 U.S.C. § 1031, "no gain or loss shall be recognized on the exchange of property held for . . . investment if such property is exchanged solely for property of like kind . . . ." This transaction is known as a "Starker Exchange." In response to the plaintiff's inquiry, Wood advised that the purchase of the D.C. Property in 2000 as a Starker Exchange—a transaction on which Wood had served as the plaintiff's real estate agent—meant the sale of the D.C. Property in 2010 could not be structured so as to avoid payment of capital gains. Compl. ¶ 11. As a result of Wood's representation, the plaintiff proceeded with the sale of the D.C. Property "without implementing the appropriate transaction to qualify" as a Starker Exchange under 26 U.S.C. § 1031. Compl. ¶ 13. The plaintiff alleges—and the defendants have not disputed—that this advice was incorrect. *Compare* Compl. ¶ 12 *with* Defs.' Mem.

On September 14, 2010, the plaintiff completed the sale of the D.C. Property and received a check for $545,000. Compl. ¶ 13. The plaintiff used the funds to purchase and make improvements to the Farm. *Id.* In 2011, the plaintiff "went to his accountant at H&R Block to file his taxes for 2010" and owed in excess of $75,000 in capital gains taxes as a result of the sale of the D.C. Property, which taxes remain outstanding. *Id.* ¶¶ 14, 15.

On September 13, 2013, the plaintiff, now residing in West Virginia, brought this diversity action against defendants Wood, Meyer, and City Houses alleging breach of contract, negligent misrepresentation, breach of fiduciary duty, and violations of D.C. Code §42-1701, *et seq.,* relating to the sale of the D.C. Property. The plaintiff seeks to recover damages and

attorneys' fees. The defendants have moved to dismiss all counts for failure to state a claim. *See generally* Defs.' Mem.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original; internal quotations and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id.* at 570. Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all

factual allegations in the complaint as true, even if doubtful in fact. *Twombly* at 555; *Sissel v. U.S. Dep't of Health & Human Servs.*, No. 13-5202, 2014 U.S. App. LEXIS 14397 (D.C. Cir. 2014) (in considering Rule 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct" (internal citations omitted)). In addition, courts may "ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322; *see also English v. Dist. of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

*Pro se* plaintiffs are "[held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Tate v. Dist. of Columbia*, 627 F.3d 904, 912 (D.C. Cir. 2010). Nevertheless, "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. Dist. of Columbia Office of Mayor,* 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal,* 556 U.S. at 679).

In this Circuit, dismissals with prejudice under Rule 12(b)(6) are disfavored and the "'standard for dismissing a complaint with prejudice is high.'" *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) (quoting *Belizan v. Hershon,* 434 F.3d 579, 583 (D.C. Cir. 2006)); *see also Rollins v. Wackenhut Services, Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (noting that this Circuit's "decisions have imposed a 'high' bar for Rule 12(b)(6) dismissals with prejudice," and that such "case law on Rule 12(b)(6) dismissals is not fully aligned with the Rules" since "[o]n the contrary, Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its

5

discretion states otherwise."). Dismissal with prejudice may be appropriate, however, "when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

**III.    DISCUSSION**

The defendants have moved, under Federal Rule of Civil Procedure 12(b)(6), to dismiss all four of the plaintiff's state law claims for breach of contract, negligent misrepresentation, breach of fiduciary duty, and violations of D.C. Code § 42-1701, *et seq.*[2] Federal jurisdiction in this case is based on diversity of citizenship, 28 U.S.C. § 1332, and, accordingly, state law provides the substantive rules of law with regard to all claims in this case. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).[3] Therefore, the Court will apply District of Columbia law to this case. *See Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) ("The 'broad command of Erie,' of course, is that 'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction." (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965))); *see also Arias v. DynCorp*, 752 F.3d 1011, 1013 (D.C. Cir. 2014); *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 46 n.3 (D.D.C. 2012) (applying District of Columbia law in diversity suit where "[b]oth parties applied District of Columbia law in their motion papers without engaging in any choice of law analysis"); *Piedmont Resolution, L.L.C. v. Johnston, Rivlin & Foley,* 999 F. Supp. 34, 39 (D.D.C. 1998) (same).

The Court addresses the sufficiency of each of the plaintiff's claims *seriatim* below.

---

[2] The defendants also challenge the plaintiff's claims for attorneys' fees as neither the contract nor D.C. § 42-1701, *et seq.*, permit the plaintiff to recover attorneys' fees. *See* Defs.' Mem. at 8 (citing *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717 (1982)). Moreover, the plaintiff is proceeding *pro se* and is not entitled to reimbursement for any fees that would have been paid to retained counsel. Therefore, the plaintiff's demand for attorneys' fees is stricken.
[3] The parties have not raised any choice of law issues, and both parties in their motion papers have relied solely upon District of Columbia law.

6

### A. First Cause of Action for Breach of Contract

Under District of Columbia law, to state a claim for breach of contract, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Logan v. LaSalle Bank Nat'l Ass'n,* 80 A.3d 1014, 1023 (D.C. 2013) (quoting *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 187 (D.C. 2009)); *Osseiran v. Int'l Fin. Corp.,* 950 F. Supp. 2d 201, 208 (D.D.C. 2013) (same).

The plaintiff alleges, in his First Cause of Action, that the defendants "breached the [Brokerage Agreement] by failing to structure the sale of the [D.C.] Property" in such a way as to avoid capital gains tax. Compl. ¶¶ 17, 18. The plaintiff cites to no provision of the contract that the defendants allegedly violated. The defendants counter that they "did not have any contractual obligation to 'structure' [the D.C. Property's] sale in any particular way." Defs.' Mem. at 4. In support of their argument, the defendants cite to a provision of the Brokerage Agreement, which they claim sets forth the duties and obligations of the defendants. *Id.* The provision provides that the "purpose" of the agreement is to "grant to [the defendants] the exclusive right to sell, exchange or convey the [D.C. Property]." Brokerage Agreement ¶ 3. The defendants also note that under the Brokerage Agreement, the defendants earn their broker's fee when the plaintiff "enters into a sales contract . . . with any buyer procured by seller . . . provided the buyer performs and settles on said contract." *Id.* ¶ 6(a).

The defendants are correct that no provision of the Brokerage Agreement creates an obligation on behalf of the defendants to either furnish tax advice or to "structure the sale of the [D.C.] Property" so as to avoid capital gains taxes. *See generally id.* Nor has the plaintiff in either his Complaint, or his briefing, pointed to any provision of the Brokerage Agreement

7

creating such an obligation.  Accordingly, because there is no "obligation or duty arising out of the contract" to structure the [D.C.] Property sale in such a way as to avoid capital gains tax, the defendants could not have breached such a provision.  *See Logan*, 80 A.3d at 1023.  The plaintiff's breach of contract claim is therefore dismissed.

Additionally, because the contract contains no language or provision creating such an obligation, and because the Court can envision no additional facts by which an amended pleading could cure such a deficiency, the plaintiff's claim for breach of contract is dismissed with prejudice.  *See Firestone*, 76 F.3d at 1209.

### B. Second Cause of Action for Negligent Misrepresentation

The plaintiff next brings a claim for negligent misrepresentation against the defendants. Under District of Columbia law, a claim for negligent misrepresentation requires that: (1) the defendant make "a false statement or omit[] a fact that he had a duty to disclose;" (2) the false statement or omission "involve[] a material issue;" and (3) the plaintiff "reasonably rel[y] upon the false statement or omission to his detriment."  *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999); *see also Parr v. Ebrahimian*, 774 F. Supp. 2d 234, 240 (D.D.C. 2011). "While reasonable reliance can be a jury issue, dismissal for failure to state a claim is proper when no reasonable person would have relied on the representation."  *Davis v. World Sav. Bank, FSB*, 806 F. Supp. 2d 159, 173 (D.D.C. 2011); *see also Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (discussing requirement that "the plaintiff acted in reliance upon the alleged misrepresentation").

The defendants do not challenge—and thereby concede— that the plaintiff has alleged sufficient facts to satisfy the first two requirements for negligent misrepresentation, namely, the making of a false statement involving a material issue.  The defendants do challenge, however,

8

whether the reliance by the plaintiff on statements regarding the "tax status" of the D.C. Property was reasonable. *See* Defs.' Mem. at 6. In support of their argument, the defendants cite three cases from this Court for the proposition that where an alleged representation contradicts the clear terms of a written contract, reliance upon the representation is unreasonable as a matter of law. *See id*. (citing *Davis*, 806 F. Supp.2d at 173; *In re United States Office Prods. Co. Sec. Litig*., 251 F. Supp.2d 58, 74–75 (D.D.C. 2003); *Smith v. Washington Metro Area Transit Auth*., No. 95-0687, 1997 WL 182286 (D.D.C. Apr. 4, 1997)).

For example, in *Davis*, the plaintiff claimed fraud and negligent misrepresentation on the part of a mortgage lender because "although the Note stated on its face that it is fixed-rate, it is really an adjustable rate note." 806 F. Supp. 2d at 174. The court painstakingly reviewed the Note at issue and determined that "[o]n its face it expressly and clearly provided that the while the interest rate is fixed, the minimum payment might" fluctuate depending on various factors. *Id*. Consequently, the plaintiff failed to allege reasonable reliance to state a claim "[b]ecause the claims for fraud and negligent misrepresentation are flatly contradicted by the express terms of the Note." *Id.*

Similarly, in *Smith,* the court found that the plaintiff could not demonstrate reasonable reliance on his supervisor's oral promise that a temporary promotion would be permanent when that oral representation was "contradicted by the express written provisions of the WMATA Manual," which "establishe[d] in unambiguous terms the necessary requirements for a promotion or any other change in employment status." 1997 WL 182286 at *5. Thus, the plaintiff, who was a long-tenured employee familiar with the employer's practices, "could not reasonably believe that his promotion could be effected without a Personnel Action Report authorizing it" or that his supervisor "acting alone, had actual authority to effect, without any documentation, a

permanent promotion." *Id.*

By contrast to both *Davis* and *Smith*, the alleged misrepresentation at issue in the present case does not "flatly contradict" the express terms of the agreement. According to the Complaint, defendant Wood made a misrepresentation with the statement that "the purchase of the [D.C.] Property as a 'Starker Exchange' in 2000 barred another exchange in 2010." Compl. ¶ 22; *see also id.* ¶ 11. Neither the Brokerage Agreement nor the Sales Agreement contains any provision to the contrary. Indeed, neither discusses the tax status of the D.C. Property in 2000 or makes any representations regarding its status in 2010. The Sales Agreement provides only that Defendant Wood was "retained solely as a real estate agent and not as an attorney, tax advisor, . . . or other professional service provider." Sales Agreement ¶ 27(d). The Sales Agreement also advises the plaintiff "to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters." *Id.* ¶ 27.

The issue here, therefore, is not whether the plaintiff reasonably relied on a representation flatly contradicting the express terms of a writing, as discussed in both *Davis* and *Smith*. S*ee Davis*, 806 F. Supp. 2d at 174 ("Because the claims for fraud and negligent misrepresentation are flatly contradicted by the express terms of the Note, they fail to state a claim."); *Smith*, 1997 WL 182286, at *5 ("[N]o reasonable trier of fact could conclude that plaintiff was entitled to rely upon oral representations of his superior that were contradicted by the express written provisions of the WMATA Manual."). Rather, the issue is whether the plaintiff's reliance on defendant Wood's representation regarding a tax matter involving a real estate transaction was reasonable in light of the admonitions contained in the contract.[4] This is a closer call.

---

[4] Under both federal and District of Columbia law, the plaintiff has an obligation to read the contract. *See Shelton v. The Ritz Carlton Hotel Co.*, 550 F. Supp. 2d 74, 80 (D.D.C. 2008) ("[U]nder both D.C. and federal law one who signs a contract has a duty to read it and is obligated according to its terms." (citing *Paterson v. Reeves,* 304 F.2d 950, 951 (D.C. Cir. 1962); *Pers Travel, Inc. v. Canal Square Assoc.,* 804 A.2d 1108, 1110 (D.C. 2002))).

On this point, *In re United States Office Prods. Co. Sec. Litig*., 251 F. Supp. 2d 58, 74–75 (D.D.C. 2003), which is relied upon by the defendants, proves instructive but not helpful to the defendants. In *United States Office Products*, the court addressed whether a plaintiff's reliance on an alleged oral contract modification was reasonable in light of a written contract's express requirement that all modifications be made in writing. *Id*. at 75. The court concluded that such reliance was unreasonable, absent additional facts explaining why the plaintiff reasonably believed the written contract terms did not apply to the oral representations. *Id.* In the court's estimation, "the plaintiff's reliance on the alleged misrepresentations regarding the compensation by the defendants resembles blind reliance . . . ." *Id.* at 75. Absent a fiduciary duty, "one cannot close his eyes and blindly rely upon the assurances of another . . . ." *Id.* at 74–75 (quoting *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 934 (D.C. 1992)).

The instant case is distinguishable from *United States Office Products*. First, distinct from *United States Office Products,* and the other cases relied upon by the defendants*,* the instant case *does* concern a fiduciary duty. *See Vicki Bagley Realty, Inc. v. Laufer* 482 A.2d 359, 364 (D.C. 1984) ("A real estate broker, like any other agent, owes a fiduciary duty to his principal."). Second, and unlike in *United States Office Products*, the plaintiff here alleges additional facts to justify his reliance upon the representation of his real estate agent, defendant Wood. According to the Complaint, defendant Wood was the plaintiff's real estate agent during the original 2000 purchase of the D.C. Property, which was structured as a Starker Exchange. Compl. ¶¶ 9, 13. Drawing all inferences favorable to the plaintiff, the 2000 purchase of the D.C. Property suggests that Defendant Wood was, at a minimum, familiar with Starker Exchanges and that the plaintiff was aware of this fact.

11

Accordingly, the plaintiff alleges additional facts—beyond merely the alleged misrepresentation—to explain his reliance on the defendants' representation concerning the tax status of the D.C. Property. The defendants owed the plaintiff a fiduciary duty and the defendants had prior experience in precisely the type of transactions inquired of by the plaintiff. In light of these additional facts, the plaintiff's reliance was not unreasonable as a matter of law such as to warrant dismissal on a Rule 12(b)(6) motion.[5] Where a real estate agent—experienced in a specific type of transaction—makes an affirmative representation to the principal regarding that same type of transaction, the principal is not unreasonable as a matter of law to rely upon the representation.

Therefore, the Court denies the defendants' Motions to Dismiss the Complaint with respect to Count II.

## C. Third Cause of Action for Breach of Fiduciary Duty

In his Third Cause of Action, the plaintiff alleges that the defendants failed in their fiduciary duty to the plaintiff by "failing to either notify Plaintiff of the tax exemption or taking the necessary steps to create a like-kind exchange to qualify for the [28 U.S.C. § 1031] tax exemption . . . ." Compl. ¶ 30.[6]

To state a claim for breach of fiduciary duty under District of Columbia law, a plaintiff must allege that "'(1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) to the extent plaintiff seeks compensatory damages—the breach proximately caused an

---

[5] This conclusion is limited to the facts alleged in the pleading that must, at the motion to dismiss stage, be assumed to be true, along with all reasonable inferences drawn in the plaintiff's favor. As the case proceeds, the apparent sophistication of the plaintiff in this matter, the relative simplicity of the contracts at issue, and any caveats to the representation made by the defendants may very well make the plaintiff's reliance unreasonable.

[6] The plaintiff has not alleged that the defendants breached a fiduciary duty by affirmatively providing incorrect guidance regarding the tax implications of the sale. *See* Compl. ¶ 30 ("Defendants breached their fiduciary duty by failing to either notify Plaintiff of the tax-emption or taking the necessary steps to create a like-kind exchange to qualify for the 1031 tax exemption itself."). Therefore, the Court need not address whether such allegations could state a claim for breach of fiduciary duty on the instant motion.

injury.'" *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 109, 115 (D.D.C. 2013) (quoting *Bode & Grenier, LLP v. Knight,* 821 F. Supp. 2d 57, 64 (D.D.C. 2011)). "A real estate broker, like any other agent, owes a fiduciary duty to his principal." *Laufer*, 482 A.2d at 364 (citations omitted). "The fiduciary duty owed by a real estate agent . . . requires the exercise of the highest fidelity toward the principal. It encompasses an obligation to inform the principal of every development affecting his interest . . . ." *Id.* at 364–65; *Jenkins v. Strauss*, 931 A.2d 1026, 1032-33 (D.C. 2007).

D.C. statutory law prescribes the scope of the duties owed by real estate brokers. *See* D.C. Code § 42-1703 (titled "Duties of real estate brokers, salespersons, and property managers," and stating "The common law of agency relative to brokerage relationships in real estate transactions to the extent inconsistent with this section shall be expressly abrogated."). A real estate broker is required to "exercise ordinary care," § 42-1703(a)(1)(D), and to "disclos[e] to the seller material facts related to the property or concerning the transaction of which the licensee has actual knowledge." § 42-1703(a)(1)(B)(iii). A "material fact" is "information that, if known, would be likely to induce a reasonable person to enter into or not enter into or consummate a real estate transaction." § 43-1702(7B). A broker is deemed "to possess actual knowledge and information only." § 42-1703(l)(3). Additionally, a real estate broker is required to "perform in accordance with the terms of the brokerage relationship," *see* § 42-1703(a)(1)(A), which is defined as "the contractual relationship between a client and a real estate [broker] . . . ." § 42-1702(2A). Therefore, the fiduciary duties owed by the real estate agent are set by statute and modified by the contractual agreement of the parties.[7]

---

[7] *See also* Restatement (Second) of Agency § 376 ("The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties . . . .").

As discussed above, no contractual provision of the Brokerage Agreement creates an obligation or duty to examine the tax liabilities of the potential sale or to structure the sale to avoid tax liability. Thus, the question before the Court is whether an obligation to examine and notify the seller of the tax consequences of a potential sale, and to structure the sale accordingly, arises out § 42-1701 *et seq.* and, if so, whether the Brokerage Agreement or Sales Agreement limit that duty.

While no provision of the D.C. Code expressly provides such a duty, § 42-1703(a)(1)(B)(iii) requires the real estate broker to "disclos[e] to the seller material facts . . . concerning the transaction of which the licensee has actual knowledge." Yet, even a broad interpretation of this provision cannot save the plaintiff's Complaint. First, the statute requires merely that the broker furnish information concerning the transaction to the seller, not "tak[e] the necessary steps to create a like-kind exchange . . . ." Compl. ¶ 30. It is simply an information sharing obligation. Second, with respect to the defendants' other alleged duty—the duty to notify the plaintiff of potential tax exemptions—the plaintiff's own Complaint rebuts the allegation that the defendants did not "notify Plaintiff of the tax exemption." Indeed, as alleged in the Complaint, both the plaintiff and defendant Wood engaged in a conversation regarding 26 U.S.C. § 1031. *See* Compl. ¶ 11 (discussing conversation regarding whether the D.C. Property was eligible for a "Starker Exchange"). The defendant was therefore plainly aware of the potential tax exemption.

Finally, the express disclaimer provided in paragraph twenty seven of the Sales Agreement—"Seller acknowledge[s] that the Broker is being retained solely as a real estate agent and not as an attorney [or] tax advisor . . . ."—is sufficient to limit any potential statutory duty. At least one court, on facts similar to the current case, determined that the presence of a

contractual provision disclaiming the duty to provide tax advice preempts any argument that the real estate agent owed such an affirmative duty. *See Carleton v. Tortosa*, 14 Cal. App. 4th 745, 754-58 (Cal. Dist. Ct. App. 1993) ("[T]he contractual language in effect specifies that a real estate broker *has no duty* to provide legal or tax advice.") (emphasis in original). Indeed, "plaintiff's allegation that defendant had a duty to 'issue-spot' or warn him regarding tax consequences of the transactions is at odds with the documents' admonition that plaintiff should get his tax advice elsewhere." *Id.* at 756. In light of the express contractual provisions limiting any potential duty in the instant case, *see* Sales Agreement ¶ 27, the Court declines to hold that a real estate agent has an affirmative duty to notify sellers of potential tax exemptions.

Accordingly, the Court determines that plaintiff has failed to state a valid claim for breach of a fiduciary duty, which claim is dismissed with prejudice. *See Firestone*, 76 F.3d at 1209.

### D. Fourth Cause of Action for Violations of D.C. Statutory Law

Finally, the plaintiff seeks relief for violations of D.C. Code §§ 42-1701, *et seq*. *See* Compl. ¶¶ 32–35. The defendants argue that the plaintiff fails to identify any obligation or duty arising out of the D.C. Code that would obligate a real estate broker to "disclose . . . that the sale of the Property could and should be structured as a qualifying Section 1031 exchange." Defs.' Mem. at 7 (citing Compl. ¶ 33). The Court has already addressed the duties and obligations arising out of D.C. Code §§ 42-1701 when discussing the plaintiff's breach of fiduciary duty claim. For the same reasons discussed above, the plaintiff's claim is dismissed. Moreover, because the Court can envision no additional facts by which an amended pleading could cure such a deficiency, the dismissal of this claim is with prejudice. *See Firestone*, 76 F.3d at 1209.

## IV. CONCLUSION

For the reasons explained above, the defendants' Motion to Dismiss the Complaint is granted in part and denied in part. Specifically, the defendants' Motion to Dismiss the Complaint is granted with respect to the plaintiff's claims for breach of contract, breach of fiduciary duty, and violations of D.C. Code §§ 42-1701 and those claims are dismissed with prejudice. Finally, the Court denies the defendants' Motion to Dismiss the Complaint with respect to the plaintiff's claim for negligent misrepresentation.

An order consistent with this Memorandum Opinion will be contemporaneously entered.

Date: September 18, 2014

_____
BERYL A. HOWELL
United States District Judge