## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN COON, | |
| Plaintiff, | Civil Action No. 13-1400 (BAH) |
| v. | Judge Beryl A. Howell |
| EDWARD WOOD, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

The plaintiff, John Coon, proceeding *pro se*, brought a variety of state law claims arising

from a 2010 real estate transaction for which the defendants acted as the plaintiff's real estate

agents.  On September 18, 2014, this Court granted the defendants' motion to dismiss all but one

of these claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim

for which relief may be granted.  *Coon v. Wood*, 68 F. Supp. 3d 77, 79 (D.D.C. 2014).  With

discovery related to the plaintiff's remaining claim now complete, pending before the Court are

the parties' cross-motions for summary judgment on the plaintiff's claim that the defendants

negligently misrepresented the potential tax consequences of the 2010 transaction.  ECF Nos. 21,

24.  For the reasons set forth below, because the plaintiff fails to demonstrate that he has

standing to pursue his remaining claim, the Court lacks jurisdiction over this matter, which must

be dismissed, and the parties' cross-motions for summary judgment are therefore denied as moot.

## I.      BACKGROUND

The factual allegations underlying this dispute have been generally summarized in this

Court's prior decision dismissing three of the plaintiff's claims against the defendants.  *See*

*Coon*, 68 F. Supp. 3d at 80–81.  The facts pertinent to resolving the instant motions are briefly

summarized below.

In 2010, the plaintiff became interested in selling property in the District of Columbia ("the D.C. Property"), with the intention of using the proceeds from this sale to purchase a new investment property consisting of farm land near Charles Town, West Virginia. Defs.' Statement of Material Facts ("Defs.' SMF") ¶ 6, ECF No. 21-2. According to the plaintiff, after speaking with a tax professional regarding the potential tax ramifications of the proposed transaction, he sought the representation of Defendant Edward Wood, an "associate broker" at Defendant City Houses D.C., and inquired whether the sale "could be accomplished in a way to avoid any capital gains on the D.C. Property." *Id.* ¶¶ 7–10; Compl. ¶¶ 1, 11. In response, the plaintiff alleges that Wood incorrectly advised him that, because the purchase of the D.C. Property was itself structured to avoid federal capital gains taxes, the sale of that property in 2010 could not also be structured in a similar manner. Defs.' SMF ¶ 11. Thereafter, the plaintiff proceeded with the sale of the D.C. Property without structuring the transaction to avoid incurring a capital gains tax liability. *Id.* ¶ 16.

As a result, the plaintiff alleges that he currently owes in excess of $75,000 in federal capital gains taxes as a result of the sale. *Id.* ¶ 17. On the advice of his tax preparer, however, the plaintiff did not claim any income associated with the sale on his 2010 federal tax return. Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") ¶ 5, ECF No. 27. Instead, with these taxes unpaid, the plaintiff filed the instant action on September 19, 2013, seeking to recover damages and attorneys' fees on claims of breach of contract, negligent misrepresentation, breach of fiduciary duty, and violations of D.C. Code §42-1701, *et seq.,* relating to the sale of the D.C. Property. *Coon*, 68 F. Supp. 3d at 81. The plaintiff claims in his opposition to the defendants' instant motion for summary judgment that he intends to amend his 2010 return at the conclusion of this action to include retroactively the capital gains associated with this sale. Pl.'s Opp'n ¶ 5.

2

Following the resolution of the defendants' motion to dismiss, which left pending only the plaintiff's negligent misrepresentation claim, the parties proceeded to discovery. *See* Minute Order, dated Oct. 2, 2014 (issuing a schedule to govern discovery and the filing of dispositive motions). During the course of discovery, the parties disputed certain issues related to the production of the plaintiff's 2010 federal tax return, which the Court resolved during a telephone conference, *see* Minute Entry, dated April 1, 2015, by ordering the plaintiff to file regular reports to the Court regarding his efforts to produce this document to the defendants, Minute Order, dated April 1, 2015. Soon after the plaintiff's production of his 2010 federal tax return, *see* Pl.'s Status Update of IRS Transcript, ECF No. 20, the defendants moved for summary judgment, Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 21. The plaintiff subsequently filed a cross-motion also seeking summary judgment. Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 24.

With discovery now completed, the parties contest various aspects of the defendants' work for the plaintiff in connection with the plaintiff's sale of the D.C. Property, as well as the plaintiff's claim that the defendants negligently misadvised him regarding the potential tax consequences of that sale. *Compare* Defs.' SMF, *with* Pl.'s Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") at 4–5 ("Statement of Material Facts"), ECF No. 27. These disputes aside, the parties agree that the plaintiff reported no income from the sale on his 2010 federal tax return and, as yet, has not amended this return to include any such income, let alone pay any taxes on that sale. Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") at 3, 7, ECF No. 21-1; Pl.'s Opp'n at 2. With this in mind, in seeking summary judgment, the defendants first argue that the plaintiff has yet to suffer any actual injury as a result of the defendants' alleged misrepresentations and, as a result, lacks standing to pursue his claim in this Court. Defs.' Mem. at 5–7.

Notably, this issue was neither raised nor considered in connection with the defendants' motion to dismiss, since the plaintiff's failure to pay any capital gains taxes associated with the sale of the D.C. Property only became clear during the course of discovery. Nonetheless, unlike other defenses, which are generally waived if not made in a defendant's initial response to a complaint, FED. R. CIV. P. 12(h)(1)–(2), a challenge to federal subject-matter jurisdiction is not waivable and may be raised at any point in the proceedings, *see* FED. R. CIV. P. 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)); *see also Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005). Instead, as discussed below, the question of the plaintiff's standing to sue goes directly to the Court's jurisdiction over this matter. Accordingly, before scrutinizing the merits of the parties' respective summary judgment motions, the Court first must assure itself of its authority to adjudicate the plaintiff's claim.

## II.    LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject-matter jurisdiction over a case, the court must dismiss it, FED. R. CIV. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006), and the burden of establishing any jurisdictional facts to support the exercise of the

subject matter jurisdiction rests on the plaintiff, *see Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).

With regard to standing, Article III of the Constitution restricts the power of federal courts to hear only "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ("'One element of the of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997))).  As the Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements."  *Defs. of Wildlife*, 504 U.S. at 560.  First, the plaintiff must have suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* (citations and internal quotation marks omitted). Second, there must be "a causal connection between the injury and the conduct complained of," i.e., the injury alleged must be fairly traceable to the challenged action of the defendant.  *Id.* Finally, it must be likely that the injury will be redressed by a favorable decision.  *Id.* at 561.

With regard to the injury-in-fact requirement, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient" to establish standing.  *Clapper*, 133 S. Ct. at 1147 (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  Thus, while a showing that an injury is "certainly impending" does not require a showing that the injury is certain to happen, allegations of a future injury resting on a "highly

attenuated chain of possibilities" are insufficient to establish standing. *Id.* at 1147–48. This concern is particular acute where an asserted injury rests "on speculation about the decisions of independent actors." *Id.* at 1150.

At the summary judgment stage, the plaintiff "can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (internal quotations and alterations omitted) (quoting *Defs. of Wildlife,* 504 U.S. at 561). Thus, while "general factual allegations of injury resulting from the defendant's conduct may suffice to show standing at the motion to dismiss stage, at summary judgment a court will not presume the missing facts necessary to establish an element of standing." *Id.* (internal quotations and citations omitted).

## III.    DISCUSSION

In this case, the gravamen of plaintiff's claim is that the defendants negligently misrepresented the potential tax consequences of the plaintiff's 2010 sale of the D.C. Property to finance the later purchase of the farm in West Virginia, which led the plaintiff to owe "an unchangeable tax debt of $76,344 plus penalties and interest that mount daily." Pl.'s Mot. In opposing the defendants' motion for summary judgment, the plaintiff explains that, consistent with "the advice of his tax preparer," he did not report income from the sale of the D.C. Property on his 2010 federal income tax return. Pl.'s Opp'n at 2. The plaintiff's basis for doing so is somewhat unclear, and the plaintiff appears to offer conflicting explanations for this decision. *Compare id.* at 2 (explaining that the plaintiff did not include this income on his 2010 tax return "because he did not have the funds to pay [the] tax at [that] time"), *with* Defs.' Mem., Ex. A at 81:7-11, ECF No. 21-3 (indicating that that the plaintiff, on the advice of his tax preparer,

6

excluded this income "because [he] honestly believe[d] that [he] didn't owe it and [he could] amend [the return] later pending" this outcome of this litigation).  In any event, however, the plaintiff avers that his intention "was and still is to amend the [2010 tax return to retroactively report the 2010 income] at the end of this suit."  Pl.'s Opp'n at 2.[1]

This stated intention notwithstanding, the defendants argue that the plaintiff has yet to suffer any tangible harm arising from the 2010 transaction and contend that the plaintiff has therefore failed to demonstrate an injury-in-fact sufficient to establish standing to pursue his claim in this Court.  Defs.' Mem. at 6–7.  In support, the defendants note that the Internal Revenue Service ("IRS") "has not imposed any tax liability on [the plaintiff] in connection with the sale," and that "available evidence indicates that [the plaintiff] is unlikely to incur any future IRS liability in connection with" the 2010 transaction.  *Id.*  The defendants observe that the plaintiff has not been audited in the four years since he filed his 2010 tax return and has put forward no evidence to suggest that he is likely to be audited in the future.  *Id.* at 7.  Thus, the defendants argue, any "future possible injury [alleged by the plaintiff] is speculative at best" and therefore falls short of an injury-in-fact sufficient to confer standing on the plaintiff.  *Id.*

In connection with the present cross-motions, the parties have provided, and the Court has identified, no binding authority addressing the question whether *potential* tax liability may constitute a cognizable injury sufficient to support standing under Article III.  Nonetheless, out-of-circuit federal courts confronted with this question have consistently held that the mere possibility of future tax liability, or any associated penalties imposed by the IRS, is insufficient to establish standing to sue in federal court.  *See*, *e.g.*, *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 526–28 (E.D.N.Y. 2013), *aff'd*, 548 F. App'x 741 (2d Cir.

---

[1]    The plaintiff alleges no other injury arising from the defendants' alleged negligence.  *See generally* Compl.

2014) (rejecting plaintiff's claim that the defendant negligently adopted an erroneous interpretation of tax law where the IRS had not yet imposed any additional tax liability on the plaintiff); *Local No. 773 of the Int'l Ass'n of Firefighters v. City of Bristol*, No. 3:11CV1657 MPS, 2013 WL 1442453, at *3–4 (D. Conn. Apr. 9, 2013); *Scanlan v. Kodak Retirement Income Plan*, 678 F. Supp. 2d 110, 113–14 (W.D.N.Y. 2010); *Cole v. Cook*, 2006 WL 3791680, at *3 (N.D. Ohio Dec. 22, 2006) ("There is no allegation that the IRS is seeking back taxes from Plaintiffs, or that it has assessed any penalties against them. The IRS has issued no adverse ruling against Plaintiffs. Because there is no actual case or controversy, Plaintiffs' . . . claim is premature and any decision . . . would be advisory only."); *Daines v. Alcatel, S.A.*, 105 F. Supp. 2d 1153, 1155 (E.D. Wash. 2000) (holding that the plaintiff's request for a court order requiring the defendants to "advance" the plaintiff money to cover a potential, but as-yet uncertain tax liability did not satisfy the jurisdictional requirements of Article III).[2]

While these decisions are non-binding, this general consensus is unsurprising. Indeed, the plaintiff's asserted injury rests on the assumption that at least two future events will come to pass that, only together, would result in the plaintiff incurring the additional tax liability for which he now seeks monetary relief. Specifically, first, at some future date, the IRS must initiate an audit of the plaintiff and, second, as a result of this audit, the IRS must conclude that the plaintiff owes additional taxes stemming from the sale of the D.C. Property. Beyond the general reluctance recognized by the Supreme Court to recognize standing based primarily "on speculation about the decisions of independent actors," *Clapper*, 133 S. Ct. at 1150, the plaintiff

---

[2] At least one federal district court has found standing where a plaintiff sought declaratory relief, as opposed to actual damages, in connection with any additional tax liability resulting from an ongoing IRS audit. *See Nathel v. Siegal*, 592 F. Supp. 2d 452, 473 (S.D.N.Y. 2008). By contrast, here, the plaintiff presents no evidence that he is currently being audited by the IRS or that any such audit is impending or otherwise likely. Defs.' Opp'n at 7. Absent any indication that the plaintiff will soon incur additional tax liability associated with the 2010 sale of the D.C. Property, the plaintiff's present request for as-yet hypothetical damages stemming from the defendants' alleged negligence is insufficient to constitute an injury-in-fact amenable to resolution by this Court.

has offered no evidence that such an audit is imminent or likely, or that any future audit would result in the plaintiff owing additional taxes stemming from the 2010 transaction.

The plaintiff's conclusory assertion that, as "a matter of federal tax law[,] . . . the proceeds from a commercial real estate sale incur a tax" is unavailing. Pl.'s Rebuttal Defs.' Mot. Summ. J. at 1, ECF No. 23. As another federal court has explained, "were the Court to allow [a] case to proceed prior to an IRS determination and plaintiff was victorious in [his] lawsuit, but the IRS later determined that [no back-taxes were owed, the] plaintiff would receive a windfall." *SC Note Acquisitions, LLC*, 934 F. Supp. 2d at 527. For this reason, among others, premature resolution of the sort of speculative injuries alleged by the plaintiff generally are insufficient to establish standing in federal court. *See Clapper*, 133 S. Ct. at 1150. Put simply, the Court "cannot decide a case with a hypothetical injury that may never occur." *SC Note Acquisitions, LLC*, 934 F. Supp. 2d at 527.[3] Thus, until the injury alleged by the plaintiff is certainly impending, and not reliant on a chain of possible actions of third parties, the plaintiff has failed to establish a case or controversy that may be resolved by this Court. *See Clapper*, 133 S. Ct. at 1147–48.

In so concluding, the Court is mindful of the plaintiff's concern that he may, at some future date, be found to have a substantial tax liability, in addition to any attendant fees or interest, stemming from the 2010 transaction. Given this uncertainty, the plaintiff's desire to seek immediate resolution of his claim against the defendants is certainly understandable. Though the swift resolution of private disputes may be preferable in many circumstances,

---

[3] While the Complaint leaves some uncertainty regarding the nature of the plaintiff's requested relief, the plaintiff's request for entry of "final judgment that the violations of law [alleged by the plaintiff] have occurred" may be construed as a request for declaratory judgment requiring the defendants to pay whatever future tax liability the plaintiff may incur as a result of the 2010 transaction. Compl. at 6. Even so construed, however, the Complaint fails to allege any actual or imminent injury that does not rest on hypothetical future events.

however, the Constitution constrains this Court's ability to resolve disputes that present no specific injury that may be redressed by a favorable ruling by the Court.  For this reason, because the plaintiff does not allege that any injury arising from his interaction with the defendants is "certainly impending," he has failed to establish standing to pursue his claim against the defendants.

## IV.    CONCLUSION

Having concluded that the plaintiff does not have standing to bring his claim at this time, the Court lacks subject-matter jurisdiction to resolve the parties' pending cross-motions and must instead dismiss the plaintiff's Complaint without prejudice.  *See Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 246 (D.C. Cir. 2015) (vacating summary judgment where the plaintiff lacked standing and remanding with instructions to dismiss the complaint); *Taylor v. FDIC*, 132 F.3d 753, 769 (D.C. Cir. 1997) (same).  Dismissing the Complaint without reaching the merits of the parties' cross-motions "clears the path for future relitigation of the issues" should the plaintiff later establish his standing to sue.  *See Maydak v. United States*, 630 F.3d 166, 177 (D.C. Cir. 2010) (internal quotations omitted) (quoting *Ramallo v. Reno*, 114 F.3d 1210, 1214 (D.C. Cir. 1997)).

For the foregoing reasons, the plaintiff's remaining claim against the defendants is dismissed, without prejudice.  Accordingly, the parties' pending motions for summary judgment are each denied, as moot.


Date: February 11, 2016


_____
BERYL A. HOWELL
United States District Judge